**FILED**

**OCT 1 5 2012**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

**Tonita Louise Hall aka Louise Redditt Toni**
2001 Columbia Pike Apartment 305
Arlington, Virginia 22204
703.521.0692
                        **Plaintiff**

Case No: _____

**Vs.**

Case: 1:12-cv-01683
Assigned To : Unassigned
Assign. Date : 10/15/2012
Description: Pro Se Gen. Civil

**The Honorable Robert Mueller**
FBI Headquarters
935 Pennsylvania Avenue, NW
Washington, D.C. 20535-0001

**United States Attorney General Eric Holder**
950 Pennsylvania Avenue
Washington, D.C.25030-0001

**Albert L. Lord, Vice Chairman and CEO**
PO Box 9500
Wilkes-Barre, Pennsylvania 18773-9500

**Albert Murray Georgia Pardon and Parole**
2 Martin Luther King, Jr. Drive, SE
Suite 458, Balcony Level, East Tower
Atlanta, Georgia 30334-4909

**Arlington County Parole Officer Tanja Gilmore**
3300 Fairfax Drive, #320,
Arlington, Virginia 22205

**Harold W. Clarke**
**Arlington County Probation and Parole Office District 10**
6900 Atmore Drive
Richmond, Virginia 23225

**Arlington County Police Officer B. Meyers Badge Number 1461**
1425 N. Courthouse Road
Arlington, Virginia 22201

**RECEIVED**

**SEP 1 3 2012**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

1

**Arlington County Police Officer R. Wenmoth Badge 0852**
1425 N. Courthouse Road
Arlington, Virginia 22201

**Debra Wiley**
United States Department of Education
4th Floor, UCP-3, MS: 5144, 830 First Street, N.E.
Washington, DC 20202-5144

**Fairfax County Clerk of Court John Frey**
4110 Chain Bridge Road, Room 116.
Fairfax, Virginia 22030

**FSA Ombudsman United States Department of Education -**
830 First Street, N.E.. Fourth Floor
Washington, DC 20202-5144

**Fairfax County Board of Supervisors**
12000 Government Center Parkway,
Fairfax, Virginia 22035

**Fairfax County Law Clerk Jessi Vannalli**
4110 Chain Bridge Road,
Fairfax, Virginia 22030

**Fairfax County Police Lieutenant T. Crabtree**
4100 Chain Bridge Road Fairfax,
Fairfax, Virginia 22030

**Fairfax County Police Officer Bauer Badge No: 3390**
6121 Franconia Rd
Alexandria, Virginia 22310

**Fairfax County Police Department**
4100 Chain Bridge Road Fairfax,
Fairfax, Virginia 22030

**Fairfax County Police Chief Col. David M. Rohrer**
4100 Chain Bridge Road Fairfax,
Fairfax, Virginia 22030

**Fairfax County Sheriff Department**
4110 Chain Bridge Road
Fairfax, Virginia 22030

**Fairfax County Sheriff Department- Magistrate Garcia**
10520 Judicial Drive
Fairfax, Virginia 22030

**Fairfax County Sheriff Wayne Hannah**
4110 Chain Bridge Road
Fairfax, Virginia 22030

**Hank W. Chao- Chair of State Board of Community Colleges**
Virginia Community College System
101 North 14th Street
Richmond, Virginia 23219

**Inspector General Kathleen Tighe**
U.S. Department of Education
Office of Inspector General
400 Maryland Avenue, SW
Washington, DC 20202-1500

**Jason Williams - Office of Inspector General (Potomac)**
**Potomac Center Plaza (PCP)**
550 12th Street, SW
Washington, DC 20202

**Joan Zanders - Director Financial Aid- Northern Virginia**
**Community College**
3001 North Beauregard Street
Alexandria, VA 22311-5097

**Joe Kuebler State of Georgia Pardon and Parole**
2 Martin Luther King, Jr. Drive, SE
Suite 458, Balcony Level, East Tower
Atlanta, Georgia 30334-4909

**Juanita Ford- United States Department of Education-Ombudsman**
U.S. Department of Education
FSA Ombudsman
830 First Street, N.E.
Washington, D.C. 20202-5144

**Northern Virginia Community College in care of State Board of Community College**
101 North 14th Street
Richmond, Virginia 23219

**Office of the Commonwealth Attorney Ian Rodway**
4110 Chain Bridge Road
Fairfax, Virginia 22030

**Office of the Commonwealth Attorney- Raymond F. Marragh**
4110 Chain Bridge Road
Fairfax, Virginia 22030

**Office of the Commonwealth's Attorney for Arlington County and the City of Falls Church - Theophani (Theo) Stamos**
2100 Clarendon Blvd. Suite 403
Arlington, Virginia 22201

**Office of Inspector General United States Department Lyndon Baines Johnson (LBJ)**
Department of Education Building
400 Maryland Ave, SW
Washington, DC 20202

**Patricia Tucker- Director of Extradition and Clemency Commonwealth of Virginia Office of the Secretary of the Commonwealth**
1111 East Broad Street, 4th Floor
Richmond, Virginia 23219

**Robert Templin Jr. - President Northern Virginia Community College**
8333 Little River Turnpike
Annandale, Virginia 22003

**Sallie Mae**
PO Box 9500
Wilkes-Barre, Pennsylvania 18773-9500

**Secretary of the United States Department of Education - Arne Duncan Lyndon Baines Johnson (LBJ)**
Department of Education Building
400 Maryland Ave, SW
Washington, DC 20202

**Sharon Bulova Chairman at Large**
12000 Government Center Parkway,
Suite 530,
Fairfax, Virginia 22035

**The Honorable Nathan Deal also Member of Georgia Pardon and Parole**
Office of the Governor
State Capitol, Room 203.
Atlanta, Georgia 30334

**Unknown Transportation Company (responsible for transporting Plaintiff to the state of Georgia)**
Unknown

**United States Department of Justice care of The Honorable Attorney General- Eric Holder**
950 Pennsylvania Avenue
Washington, D.C.25030-0001

**William W. Muse- Virginia Department of Corrections**
6900 Atmore Drive
Arlington, Virginia 23225

**William D. Hamel - Assistant Inspector General**
**Lyndon Baines Johnson (LBJ)**
Department of Education Building
400 Maryland Ave, SW
Washington, DC 20202

**Defendant(s)**

## COMPLAINT

This is a complaint seeking monetary damages for deprivation of civil rights, in addition to declaratory and injunctive relief from malice, defamation, libel, violation of the Family Education Rights and Privacy, violation of HIPPA, as a result of improper procedures directly in violation of Federal and State codes, statues and regulations under the direction of the United State codes, statues and regulations.

The plaintiff in accordance with policies and statutory law and Federal Rules of Civil Procedure he United States Department of Education ("USDOE") Secretary Arne Duncan served by certified mail on June 13, 2011 responsible for the defendant(s) article number 70072560000101923812, regarding the violations in accordance with the Family Education Rights and Privacy and several civil violations made by Debra Wiley USDOE-Ombudsman, Martha Kanter- Office of the Under Secretary, Kathleen Tighe-Office of Inspector General ("OIG"), William D. Hamel- Assistant Inspector General and Juanita Ford, USDOE Ombudsman-Chicago, Illinois, Jason Williams-Investigator OIG.

The Honorable Eric Holder-United States Department of Justice received complaints of the abduction and violations committed by Fairfax County Police Department, Fairfax County Police Officer Bowers badge number 3390, Fairfax County Police

Colonel David M. Rohrer, Fairfax County Investigator T.
Crabtree, Unknown Transportation Company, Fairfax County Board
of Supervisor, Fairfax County Clerk of Court John Frey,
Commonwealth Attorney Ian Rodway, Commonwealth Assistant
Attorney General Paul Kugelman, Fairfax County Sheriff
Department, Fairfax County Sheriff Wayne Hannah, on or about
May 20, 2010 article number 70091410000139221475, June 28, 2010
article number 70091680000120983815, July 12, 2010, article
number 70091410000139221451, November 29, 2010, article number
70092250000152662504, July 27, 2011, article number
70100780 000010647511, August 1, 2011, article number
70100780000010647511, September 15, 2011, article number
70110110000217005165.

The plaintiff has filed complaints with the Fairfax County
Police Department Internal Affairs and Virginia State Police on
August 10, 2012, the plaintiff sent a formal complaint to the
attention of Sharon Bulova-Chairman at Large, article number
70121010000027705412, in addition the plaintiff has filed
verbal complaints and completed online complaint forms for the
Fairfax County Police Department during the months of June
through August, 2012, regarding the violations of Officer
Bowers aka Bauer badge number 3390, and Investigator T.
Crabtree these complaints have been reported to the Honorable
Governor Bob McDonnell and the plaintiff has been collaborating

7

with Stacy Whitehouse-Executive Assistant for the Secretary of the Commonwealth-Janet Vestel Kelly regarding the violations committed by Fairfax County-Defendants and the Commonwealth Attorney General's Office and Fairfax County Board of Supervisor-Sharon Bulova-Chairman at Large ("Above-named Defendants "Collectively").

The plaintiff has made verbal complaints to Lieutenant Eli Cory and Sergeant Ari Morin Supervisor of Fairfax County Police Office Bowers aka Bauer on the date of July 27, 2012, and has not received any calls back from any Fairfax County Police Officer and/or the Fairfax County Board of Supervisor as a result of her complaints.  Emails where also sent to Sergeant Morin and Lieutenant Cory and Stacy Whitehouse of the Commonwealth of Virginia was also copied in the e-mails sent from June 2012 through August 2012.

The State Board of Community College received a formal complaint on July 13, 2012, article number 7010078000010646859 responsible for the violations of Northern Virginia Community College, Joan Zanders Director Financial Aid Northern Virginia Community College ("NOVA"), Commonwealth Attorney General Cuccinelli II received a formal complaint on responsible for the violations committed by Commonwealth Attorney Paul Kugelman, complaint sent on July 22, 2010, article number 70093410000212625132.  Hank W. Chao- Chair of State Board of

Community Colleges- in care of Northern Virginia Community College received a formal complaint against Northern Virginia Community College and Joan Zanders Director of Financial Aid-Northern Virginia Community College, on July 13, 2012, article number 70100780000010646859.

The plaintiff files before this court a civil rights theory, 42 U.S.C. 1983, claiming the above-named defendant(s) "Collectively" acted with and on the behalf of one another individually, separately or jointly, and collaborated to aiding and abetting or accessory to help in the commission of a crimes of abduction, mail and wire fraud through the use of forged documents and a false arrest made by Officer Bower badge number 3390, in violations of the plaintiff's 6th amendment rights. The arrest made by Officer Bowers badge number 3390, detained the plaintiff from December 27, 2009 through April 9, 2012.

The above-named defendants were and/or were not present when the crime itself was committed, but he or she has knowledge of the crime before or after the fact, and did assist in its commission through advice, actions, or financial support. The above-named defendants did collectively, individually and/or jointly participate in the crime which caused it to rise to the level of conspiracy. The above-named defendant(s) collectively violated the plaintiff's right while in their official capacity

9

## PARTIES

1.    Tonita Louise Hall aka Louise Redditt ("Plaintiff") is a resident of the Commonwealth of Virginia and has been since 2000, and is now living in Arlington, Virginia.

2.    The defendant(s) named in the plaintiff's complaint are resident of the Commonwealth of Virginia, Arlington, Fairfax and Reston, and the District of Columbia.

## JURISDICTION AND VENUE

3.    Each of the events complained of herein occurred within the District of Columbia and the Commonwealth of Virginia.

4.    The plaintiff offers herein a civil action which includes causes of action arising under 42 U.S.C. §1983, 1985 and 1986 for being subjected to a deprivation of her rights, privileges and/or immunities secured by the Constitution and applicable law, by persons acting under color of the authority of the government of the United States and the Commonwealth of Virginia.  The provisions relating to institutions and processes of the Federal Government (including the first part of the 1985 (2))-unlike those encompassing activity that is usually of primary state concern (including the second part of 1985 (2)) and the part of 1985 (3) involved in Griffin, supra) - contained no language requiring that the conspirators act

with intent to deprive their victims of equal protection of the laws.

5.   Under 28 U.S.C. §1331, the United States District Court shall have original jurisdiction of all civil actions arising under the Constitution, laws, treaties of the United States, including 42 U.S.C. §1983.

6.   The plaintiff has exhausted state, county and federal provisions for filing a grievance, complaint of appeal on the below listed complaints, also in accordance with Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-280, even on the towing of her vehicle number wobha22e8tf37632.

7.   The plaintiff offers additional causes of action involving common law claims, invasion of privacy, malicious injury and intentional infliction of mental distress.

8.   Under 28 U.S.C. § 1367, the United States District Court shall have supplemental jurisdiction over all other claims that are so related to claims in action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

9.   The plaintiff's common law claims are so related to the Federal law claims that they form part of the same case or controversy.

10.  The plaintiff asks the Court to declare her rights and other legal relations.

11.  Under the Declaratory Judgment Act, 28 U.S.C. § 2201 et. Seq., the United States District Court may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

12.  In accordance with FRCP 5.1(b(2) by service of their Complaint, the plaintiff pro-se has given in writing to the The Honorable United States Attorney General-Eric Holder and the Commonwealth of Virginia Attorney General Kenneth T. Cuccinelli II, the appropriate time, place and cause, and circumstances of the injuries sustained by the plaintiff within six months such injuries were sustained.

13.  Title 34, part 35.1, Scope of Regulations apply solely to claims asserted under the Federal Tort Claims Act, as amended, 28 U.S.C. 2671-2680, against the United States for money damages, wrongful act or omission of any employee of the Department of Education while acting within the scope of his office or employment.  However, the plaintiff makes no waiver of defenses against these notice requirements for any claim brought forth in a Federal venue and for any claim arising under Federal law.  The plaintiff further asserts the

Defendant(s) good and sufficient actual and/or constructive prior notice of all claims.

## RELEVANT FACTS

14.    The plaintiff is still in a state of detainment as a result of an act committed by Fairfax County Police Department and a single officer Bowers badge number 3390, in violation of the plaintiff's 6th amendment constitutional rights.

15.   There is new evidence showing Fairfax County Police Department and Fairfax County Sheriff Department, Fairfax County Colonel David M. Rohrer, Fairfax County Sheriff Wayne Hannah, Fairfax County Clerk of Court John Frey, Fairfax County Law Clerk Jessi Vannalli, Office of the Commonwealth Attorney(s) Raymond F. Marragh and Ian Rodway  under the direct supervision by Fairfax County Board of Supervisor in care of Sharon Bulova violating federal and state laws as result of the arrest detainment and extradition of the plaintiff to the state of Georgia.

And that the defendant(s) of civil case 1:09-cv-1340 benefited from the arrest and detainment of the plaintiff from December 27, 2009 through April 9, 2012, and addressed the plaintiff's arrest in their motions to dismiss in response to her filed civil complaint filed December 2, 2009, the plaintiff

13

was arrested without a felony charge by the Fairfax County Police Department where forged or altered government documents were used to detain the plaintiff from December 27, 2009 through March 7, 2010, where she was abducted to the state of Georgia. The defendants Sallie Mae under the direction of Albert L. Lord, Vice Chairman and CEO

16. represented by Attorney(s) Amy Owen and Elizabeth Finberg, United States Department of Education represented by Special Assistant United States Attorney Deirdre G. Brou and United States Attorney Neil H. MacBride, Northern Virginia Community College represented by Commonwealth Assistant Attorney General Paul Kugelman.

17. Commonwealth of Virginia Attorney General's office and/or Commonwealth of Virginia Assistant Attorney Paul Kugelman can be positively identified as a participant in the abduction of the plaintiff to the state of Georgia by correspondence exchanged between Billy C. Johnson and Patricia Tucker-Director of Extradition/Clemency. The phone number listed by Mr. Johnson was (804)786-8943, the phone number to the Commonwealth Attorney General's office. However, a letter dated February 9, 2010, from Commonwealth of Virginia Assistant Attorney General J. Michael Parson states…" Dear Mr. Frey The Office of the Attorney General cannot accept service of the pro se lawsuit filed in the above-referenced matter. The matter titled Tonita

Hall v. Fairfax County Adult Detention Center, Case No. CL-2010-603 was the plaintiff's filed writ of habeas case challenging the arrest and unlawful detainment of the plaintiff at the Fairfax County Adult Detention Center by Fairfax County Sheriff Wayne Hannah.

18.   That Fairfax County Sheriff Wayne Hannah was named in the state of Georgia's governor's requisition.

19.   That Fairfax County Sheriff Wayne Hannah did not provide copies of the alleged warrants from the state of Georgia to the plaintiff at any time he detained her violating state and federal law and the plaintiff's rights to file writ of habeas challenging the detainment and extradition however, detained the plaintiff for the state of Georgia from December 27, 2009 through March 7, 2010.

20.   As a result of violating the plaintiff's rights to file writ of habeas corpus pursuant to federal and state law the plaintiff 6th amendment rights were violated from December 27, 2009 through the present.

21.   On January 28, 2010, the plaintiff was showed and served fraudulently and erroneous copies of the false and altered government documents filed by the Fairfax County Police Department, Fairfax County Investigator T. Crabtree, Fairfax County Sheriff Wayne Hannah, Commonwealth of Virginia

15

Attorney(s) Raymond F. Marragh and Ian Rodway, violating the plaintiff's federal and state law rights to access the court.

22.   That on or about February 28, 2010, Commonwealth of Attorney(s) Raymond F. Marragh and Ian Rodway committed state and federal criminal act of abduction, mail and wire fraud when they received the forged and/or altered government documents and participated in the litigation and detainment of the plaintiff knowing the government documents were facetious, forged and/or altered governor's warrant and requisition.

23.   That copies of the state of Georgia Governor's requisition and Commonwealth Governor's warrant, as a result of the plaintiff's filed writ of habeas and hearing, is not currently in the possession of the Governor's office and/or his administration in accordance with federal and state law and that the current administration cannot confirm that the state of Georgia governor sent a governor's requisition to the attention of the Honorable Governor Bob McDonnell, pursuant to state and federal law.

23.   That as a result of the arrest made by Officer Bowers badge number 3390, the plaintiff's 6th amendments rights are being violated on a daily basis as the arrest and detainment from March 6, 2010 through the present is currently on the plaintiff's record and the plaintiff is suffering from lack of finance and employment as a result of defamation and slander

16

and loss of personal property to include an automobile that the defendant(s) Fairfax County Police Officer Bowers badge number 3390 and Fairfax County Investigator T. Crabtree refused to release to the plaintiff's family member or friend after the plaintiff's car was towed on December 27, 2009 by Henry's Wrecker LLC a contractor for the County of Fairfax, Virginia.

24.    That Fairfax County Police Department and Fairfax County Sheriff Department, Fairfax County Colonel David M. Rohrer, Fairfax County Sheriff Wayne Hannah, Fairfax County Clerk of Court John Frey, Fairfax County Law Clerk Jessi Vannalli, Office of the Commonwealth Attorney(s) Raymond F. Marragh and Ian Rodway  under the direct supervision by Fairfax County Board of Supervisor in care of Sharon Bulova; filed created, forged ad/or altered government state and federal documents in Fairfax County General District and Circuit Court and Fairfax County Clerk of Court John Frey was the recipient of these for the intent of fraud, which is subject to state and federal laws.

25.    That Fairfax County Police Department, Fairfax County Investigator T. Crabtree, Fairfax County Sheriff Department, Fairfax County Colonel David M. Rohrer, Fairfax County Sheriff Wayne Hannah, Fairfax County Clerk of Court John Frey, Fairfax County Law Clerk Jessi Vannalli, Office of the Commonwealth Attorney(s) Raymond F. Marragh and Ian Rodway  under the direct

17

supervision by Fairfax County Board of Supervisor in care of Sharon Bulova knowingly with an intent to harm and incapacitate the plaintiff exchanged with the state of Georgia, Fairfax County General District and Circuit court knowingly created facetious, forged ad/or altered government state and federal documents with the intent to harm and defraud the state and federal government with the intent of fraud, which is subject to prosecution by state and federal laws.

26.    That the United States Department of Justice and United States Federal Bureau of Investigation refuse to investigate and prosecute Fairfax County Police Department, Fairfax County Investigator T. Crabtree, Fairfax County Sheriff Department, Fairfax County Colonel David M. Rohrer, Fairfax County Sheriff Wayne Hannah, Fairfax County Clerk of Court John Frey, Fairfax County Law Clerk Jessi Vannalli, Office of the Commonwealth Attorney(s) Raymond F. Marragh and Ian Rodway  under the direct supervision by Fairfax County Board of Supervisor in care of Sharon Bulova to include the Honorable Judge Davis, who signed the facetious documents knowing that the documents were fraud, altered or forged.

27.    That Fairfax County Police Department, Fairfax County Investigator T. Crabtree, Fairfax County Sheriff Department, Fairfax County Colonel David M. Rohrer, Fairfax County Sheriff Wayne Hannah, Fairfax County Clerk of Court John Frey, Fairfax

18

County Law Clerk Jessi Vannalli, Office of the Commonwealth Attorney(s) Raymond F. Marragh and Ian Rodway under the direct supervision by Fairfax County Board of Supervisor in care of Sharon Bulova sent these document(s)to the state of Georgia, to the attention of Fayette County Sheriff to illegally abduct the plaintiff to the state of Georgia.

28. These documents used to arrest, detain and extradite the plaintiff to the state of Georgia are not in the possession of either Governor for the Commonwealth of Virginia, which is in direct violation of federal and state laws. In violation of the Sixth Amendment the defendants (Collectively) committed a criminal act individually, separately or jointly and violated the plaintiff's rights by battering her, falsely arresting her, defaming her, and using unnecessary force and conspiracy to abduct and kidnap the plaintiff to the state of Georgia in an effort to avoid a civil trial on her claimed violations of defamation, slander and false prosecution, which had commenced on or about December 2, 2009, at the United States District Court for the Eastern District-Alexandria against the United States Department of Education ("USDOE") USDOE-Ombudsman, Sallie Mae under the direction of Albert L. Lord, Vice Chairman and CEO, Northern Virginia Community College ("NOVA"), USDOE Office of Inspector General, FSA Ombudsman under the direction of the USDOE Secretary Arne Duncan

29.   Thereafter on or about the 29th of December, 2009, the plaintiff was unlawfully arrested through a routine traffic stop on private property by Fairfax County Police Officer Bowers Badge Number 3390 also known as Fairfax County Police Officer Bauer where he and other officers detained and arrested the plaintiff in Falls Church, Virginia on or about the 29th of December, 2009, under Virginia Code 19.2-99, Fugitive with/ Felony Arrest.

30.   A criminal conspiracy exists when two or more people agree to commit almost any unlawful act, and then take some action toward its completion. The action taken need not itself be a crime, but it does indicate that those involved the above-named defendant(s), individually, collectively or jointly in the conspiracy knew of the plan and intended to break the law. The arrest was made without any additional criminal charges against the plaintiff, other than an alleged warrant in the state of Georgia. However, the plaintiff had not committed any felony crime in the Commonwealth of Virginia at the time of her arrest on or about the 29th of December, 2009.

31.   Officer Bower had no warrants sent to his attention by the Fayette County Sheriff's Department pursuant to state and federal law to arrest the plaintiff and later detain her. Consequently as a result of the violations committed by Officer

20

Bowers and Investigator T. Crabtree who never produced

certified copies of indictment, plea and judgment…28 §2249:

> …pursuant to a judgment of a court of the United
> States, the respondent shall promptly file with the
> court certified copies of the indictment, plea of
> petitioner and the judgment, or such of them as may
> be material to the questions raised, if the
> petitioner fails to attach them to his petition, and
> same shall be attached to the return to the writ, or
> to the answer to the order to show cause.

32.  That the copy of the Governor's Requisition allegedly

signed by the Honorable Governor Sonny Perdue and the

Governor's Warrant allegedly signed by the Honorable Governor

Bob McDonnell in its original format pursuant to state and

federal law does not exist as the plaintiff pro-se in her

extradition proceedings was denied a right to view its

existence.

33.  That copies utilized by Fairfax County Police Lieutenant

T. Crabtree, Fairfax County General District the Honorable

Judge Davis, did fax and wire fraudulent documents back and

forth between Fairfax County Police Department, Fairfax County

General District Court, Assistant Attorney General Paul

Kugelman and an alleged representative of the Honorable

Governor Sunny Perdue, Billy C. Johnson-Extradition Rewards

Specialist sent a letter to the attention of Patricia B.

Tucker-Director of Extradition/Clemency, dated January 13,

2010, including a fax cover letter from Fayette County

Sheriff's Office, dated January 19, 2010, stated…"Here is a "COPY" of the Governor's Warrant…Let me know when I can start the Extradition sent to the attention to Investigator T. Crabtree, who was assigned by the Honorable Judge McDonough on or about March 23, 2010,

34. Fairfax County Police Investigator T. Crabtree stood in court as the representative for the Commonwealth of Virginia, as Commonwealth Attorney Ian Rodway filed his response to the plaintiff's writ of habeas challenging the arrest and the issued governor's warrant, the plaintiff was sentenced to five years in a Georgia state prison, where she was neglected and deprived of medical treatment for breast cancer.

35. Consequently, prior to the arrest of the plaintiff, the plaintiff had been challenging USDOE, Sallie Mae under the direction of Albert L. Lord, Vice Chairman and CEO and NOVA regarding continuing her financial funding and education which led to the filing of civil complaint 1:09-cv-1340.

36. The arrest and extradition has resulted in the plaintiff financial aid loans going into default, as an older alleged defaulted loan has been placed on the plaintiff's USDOE account denying the plaintiff an education, in violation of her 6th amendment rights.

37.  That in an effort to triumph against the plaintiff in her filed civil complaint 1:09-cv-1340, the plaintiff did receive and the defendant's did file, fax or mail documents to and from the state of Georgia and to each other individually, separately or jointly to achieve an arrest and defame, slander and falsely prosecute the plaintiff on a forgery charge, investigation led by Jason Williams of the Office of Inspector General.

38.  That Mrs. Juanita Ford of the USDOE Ombudsman-Chicago, did call and e-mail slanderous information regarding forgery and false identity to other employees in collaboration with the alleged investigation by Jason Williams and told the plaintiff she was not entitled to benefits until the plaintiff cooperated with Jason Williams.  Mrs. Ford also knew at the time of the plaintiff's arrest she was not in default of any loans due to her investigations which led to the plaintiff financial aid being reinstated in October, 2009, and Joan Zanders payment of funds on or about August 2009, which had disappeared from the plaintiff's funds disbursed from Sallie Mae during the plaintiff's enrollment at NOVA. However, the plaintiff had been denied financial assistance for a summer program at Georgetown University, in the summer of 2009 as a result of Sallie Mae under the direction of Albert L. Lord, Vice Chairman and CEO, and Joan Zanders e-mailing, calling and faxing false information about the status of the plaintiff's financial aid.

The plaintiff was slandered and defamed by these false
allegations, e-mails and phone calls placed by Joan Zanders and
employees of Sallie Mae to the attention of USDOE Office of
Inspector General stating that the plaintiff's identity was
false and that she had forged documents. Mrs. Ford's
investigation concluded unfounded results to the allegations
made by Joan Zanders employee of Northern Virginia Community
College and Sallie Mae under the direction of Albert L. Lord,
Vice Chairman and CEO.  In October 2009, the plaintiff received
a phone call from an agency in Georgia informing her she was in
default. Prior to the filing of the plaintiff's civil complaint
1:09-cv-1340 on or about December 2, 2009, the plaintiff
requested copies of another alleged defaulted promissory note
but was told she could not get them from the agency in Atlanta,
Georgia.  Before the plaintiff could investigate she was
arrested on December 27, 2009. The plaintiff's arrest and
extradition has resulted in the plaintiff's student loans at
NOVA going into default, defaming the credibility of the
plaintiff to obtain further school loans and continue her
master degree in international business.

39.  On or about December 27, 2009, the plaintiff's 1996, C220,
Four-door, Mercedes, vehicle identification number:
WDBHA22E8TF373632, was towed by Fairfax County Police Officer
Bauer Badge Number 3390, although the plaintiff was on private

property and did not give the officers' permission to tow her vehicle.

40. Police Officer Bauer falsely spelled his name on the criminal complaint and Fairfax County Police Department Vehicle Tow-In and Inventory Record as "BOWERS". This is not the correct spelling of his name. Officer Bauer is the correct spelling of his name. The plaintiff requested an administrative hearing and was informed by Lieutenant Gun M. Lee that her administrative hearing had been lost and Fairfax County Police Department had properly towed her vehicle. The plaintiff was denied an opportunity to have someone take her vehicle from the Best Buy parking lot or Henry's Wrecker's Service of Falls Church, Virginia by both Officer Bauer's and Lieutenant T. Crabtree. The plaintiff's vehicle was auctioned at Henry's Wrecker Service in Mananass, Virginia.

41. That there are no documents in the state records of the Commonwealth of Virginia and the Commonwealth of Virginia's archives for either the Honorable Governor Kaine or the Honorable Governor Bob McDonnell.

42. That Patricia Tucker did illegally and fraudulently pass copies of alleged governor warrants and requisition, in an effort to aid Assistant Attorney General Paul Kugelman to extradite and detain and extradite the plaintiff without consent or legal justification and did so by passing forged

25

governor documents which substantiate false imprisonment by the above-named defendant(s) individually, separately or jointly committed by words, acts, or by both, which caused an unlawful restraint of the plaintiff's personal liberty or freedom of movement, in violation of the plaintiff's Fourteenth Amendment civil and constitutional rights.

43. The plaintiff while in prison was subjected to cruel and unusual punishment a violation of her Eighth Amendment right resulting in an aggressive diagnosis of breast cancer.  The plaintiff lost body anatomy, her left breast and twenty-one lymph nodes in her left underarm and is currently undergoing radiation and hormone treatment with a fifty-percent chance of the cancer returning with a prognosis of possible metasising in the area of her lungs.

44.  The plaintiff was subjected to extreme abuse and neglect by the state of Georgia as a result of the collaborated acts of the above-named defendants.

45.  During the term of June 2012 through September 2012 the plaintiff notified the United States Department of Justice and the United States Federal Bureau of Investigation to file an official complaint on the basis of information and communication with Glen Smith-Recording Analyst for the Commonwealth of Virginia, Cassandra Farrell.  Mr. Smith informed the plaintiff that the request for the documents

allegedly received from the Governor of the state of Georgia

had to be requested by staff members of the Governor of the

Commonwealth's office

46. The United States refused to thoroughly investigate and

prosecute the violators of federal law.   The plaintiff filed

several written complaints as required by the United States

Department of Justice:    Contact your local FBI field office to

report incidents of:

- Hate crimes (link to our overview page paragraph on hate
  crimes);
- Excessive force or other Constitutional violations by
  persons acting as law enforcement officials or public
  officials (link to our overview page paragraph on official
  misconduct);
- Human trafficking and involuntary servitude (link to our
  overview page paragraph on human trafficking);
- Force, threats, or physical obstruction to interfere with
  access to reproductive health care services (link to our
  overview page paragraph on interference with access to
  reproductive health care);
- Force or threats to interfere with the exercise of
  religious beliefs and destruction, defacing, or damage of
  religious property (link to overview page paragraph on
  exercise of religious beliefs and destruction of religious
  property); or,
- Force or threats to interfere with the right to vote based
  on race, color, national origin, or religion.

The plaintiff on or about August 12, 2012, after receiving

a letter from The United States Department of Justice, dated

June 28, 2012, that the matters concerning Fairfax County

Police Department and Officer Bower aka Bauer Badge number

3390, Fairfax County Lieutenant T. Crabtree where of civil

issues and to be administered through the civil process.  The

plaintiff spoke with Federal Bureau Investigator Agent 1225 and

3141, of the FBI Public Correction.  The plaintiff spoke with a

Duty Agent of the Washington Field Office located at 601 4th

Street N.W, Washington, and D.C on July 27, 2012, and was

informed that it was not a matter of the FBI.  The plaintiff

also went to the Washington Field Office to make an attempt to

file a formal complaint against Fairfax County, Virginia.

Robert Mueller-United States Federal Bureau of Investigation

("FBI") is responsible for the above-mentioned agents.

47.  The County of Fairfax, Virginia by representation of

Senior Assistant County Attorney Karen L. Gibbons was

thoroughly informed that the plaintiff was being detained in

the state of Georgia as a result of Fairfax County Police

Department, Fairfax County Investigator T. Crabtree, Fairfax

County Sheriff Department, Fairfax County Colonel David M.

Rohrer, Fairfax County Sheriff Wayne Hannah, Fairfax County

Clerk of Court John Frey, Fairfax County Law Clerk Jessi

Vannalli, Office of the Commonwealth Attorney(s) Raymond F.

Marragh and Ian Rodway  under the direct supervision by Fairfax

County Board of Supervisor in care of Sharon Bulova.  The

plaintiff received a letter from Mrs. Gibbons denying the

plaintiff a request for documentations regarding her

extradition to Georgia on the date of July 29, 2010,

Commonwealth Attorney General Kenneth T. Cuccinelli II and Second Lieutenant Tim White of Fairfax County Police Department, Internal Affairs Bureau was copied the letter.

48.   That the Commonwealth of Virginia Department of Corrections has been has been harassing the plaintiff to sign parolee papers since she has returned to the Commonwealth of Virginia, the plaintiff's state of residence.

49.   That Arlington County Parole Office Tanja Gilmore under the direct supervision of William Muse has denied the plaintiff her residency stating that since the plaintiff left the state for six months she is no longer a resident of the Commonwealth of Virginia, violating the plaintiff's 6th Amendment rights.

> Interstate Compact Eligibility Guide for the Interstate Commission for Adult Offender Supervision…."Resident means a person who- 1.) has continuously inhabited a state at least one year prior to the commission of the offense for which the offender is under supervision; and 2.) that such state shall be the person's principal place of residence; and 3.) has not, unless incarcerated or on active military deployment, remained in another state or states for a continuous period of six months or more with the intent to establish a new principal place of residence.

50.   That on or about August 23, 2012, the plaintiff was detained by Arlington County Police Officer's Meyer and , limited the plaintiff's movement in her residence of 2001 Columbia Pike, Apartment 305, Arlington, Virginia, 22204, per the request of Arlington County Parole Office Gilmore however,

the Arlington officers had no valid warrant but remained in the plaintiff's residence until the state of Georgia issued and faxed a warrant for the plaintiff's arrest for violation of parole, however the plaintiff is not on parole but a medical reprieve.

51. Arlington County Parole Officer Tanja Gilmore dispatched two officers to the plaintiff's resident and detained the plaintiff on an alleged parole violation. The plaintiff was detained for about forty-minutes in her apartment before being told that the warrant had arrived and she was under arrest for parole violation. The plaintiff is not on parole but on a medical reprieve. The plaintiff was arrested without a probable cause hearing on the parole violations, pursuant to state and federal statues and law.

52. **The plaintiff was again placed in Arlington County Detention Center on the date of on or about August 29, 2012, as a result of the Commonwealth of Virginia Attorney Office of the Commonwealth's Attorney for Arlington County and the City of Falls Church - Theophani (Theo) Stamos motion filed stating the plaintiff was not to be released from the Arlington County Detention Center. The plaintiff was released on or about the 29th of August, 2012, after she was made to sign documents stating she was on medical reprieve. The plaintiff was represented by an Arlington County Public Defender Matt Foley**

**he did advise the plaintiff that she would not be transported back to the state of Georgia without her rights to file a writ of habeas corpus. After Attorney Foley advised the plaintiff of her right to file a writ of habeas if she is again arrested on a state of Georgia parole violation warrant, she elected to sign the papers presented to her at which time she was released. The plaintiff was not given a copy of the documents that she signed and has requested a copy from her Parole Officer Gilmore and her attorney Matt Foley, to date she has not received a copy of the documents.**

The plaintiff was not mentally and medically fit to make a sound legal judgment but signed due because she was concerned about not making her treatments at Virginia Hospital Center and the amount of pain she was experiencing as a result of being kept in extremely cold temperature and not allowed phone calls until night when she was released from her cell for one hour. The plaintiff suffers from neuropathy and therefore experiences extreme pain if placed in a facility that is extremely cold as she was receiving chemo-treatments during the times Arlington County arrested her.

52.  That the plaintiff is being harassed and threatened because she refuses to resort to parole conditions on a medical reprieve for her breast cancer, the plaintiff has not signed

any papers admitting that she committed a crime in the state of Georgia and/or to validate the extradition, but received a trial without her rights to an appeal. The plaintiff did not participate in the criminal trials, as a result of being denied documentations from both states regarding the administrative extradition process in which she was transported to Georgia. The plaintiff was denied an appeal by the Fayette County Superior Court on the fictitious check charge of $146.41 while serving a five-years sentence in a Georgia prison, where she was neglected and abused resulting in the aggressive condition of breast cancer and loss of body anatomy as a result of denied medical treatment that was requested for her left breast.

53.   While the plaintiff was being detained at Arlington County Detention Center she was denied treatment for her cancer because she was not transported to medical appointments.

54.   The plaintiff is being held in abeyance, stressed and harassed despite her medical condition in lieu of the plaintiff's discovery of new evidence surrounding the documents utilized to extradite her to the state of Georgia.

55.   Office of the Commonwealth Attorney Theophani Stamosnder had the plaintiff placed back into the Arlington County Detention Center after Arlington County Sheriff Captain Black communicated that his facility was not equipped to treat the plaintiff's medical condition, causing the plaintiff pain and

suffering as a result of the plaintiff's condition of
neuropathy and chemo-therapy treatment.

56.  The plaintiff was denied her rights to take legal
documents when arrested by Arlington County Police Officer(s)
B. Meyers and R. Wenmoth, the plaintiff did inform the
Commonwealth of Virginia Governor's Office, Stacy Whitehouse
that she was under detainment and was being arrested as a
result of a state of Georgia warrant regarding the medical
reprieve, in spite of the Governor's office investigation into
the plaintiff's extradition.  J. Michael Parson of the
Commonwealth of Virginia Attorney General's office was involved
in the investigation and could not deliver any documents
pertaining to the state of Georgia's request to extradite the
plaintiff.  However, the plaintiff is being harassed to sign
parole papers in spite of the new evidence of violations of
state and federal law.

56.  The plaintiff is being harassed by the state of Georgia
Pardons and Parole Board to sign parole papers and on or about
August 23, 2012, the plaintiff was instructed to take a mental
health evaluation as a result of Joe Kuebler contacted the
plaintiff's daughters regarding the plaintiff alleged mental
health condition.  Mr. Kuebler performed this investigation or
request without the medical consent of the plaintiff which is a
violation of the plaintiff's privacy and a violation of federal

33

HIPPA law. The plaintiff had taken a mental health evaluation prior to leaving Lee Arrendale State Prison allegedly concerning her breast cancer however, Medical of College employee assigned as the plaintiff's general physician had prescribed mental health medication as an aid for pain although he was not a mental health doctor. The state of Georgia had custody of the plaintiff from March 8, 2010 through April 9, 2012, and the plaintiff was never considered for mental health. The plaintiff is being harassed by persons of authority as a result of her investigations into the extradition to the state of Georgia.

57. The plaintiff has had to file complaints against Arlington County Department of Social Service as she has been denied benefits she is entitled to as a disable person and staff has consistently done excessive acts in efforts to cause the plaintiff distress i.e., the plaintiff has been denied assistance with the Arlington County Housing Grant Program however, other applicants were given assistance under the same conditions of the plaintiff being without housing or assistance from the Community Assistance Bureau for three months.

58. The Interstate Compact for Supervision of Adult Offenders Virginia Code 53.1-176.2:

> The plaintiff contends the Virginia trial court had jurisdiction to adjudicate his Virginia probation

34

violation and revoke his Virginia probation by virtue of Virginia's enactment of the Interstate Compact for Supervision of Adult Offenders ("the Compact").
The Compact is a formal agreement between the compacting states that seeks to promote public safety by controlling interstate movement of adult offenders who are subject to supervision imposed as the result of a criminal offense.  See Interstate Compact for Adult Offender Supervision, Article I; Virginia Code □ 53.1-176.2, Article I; Virginia Code 5149.21, Article I.  The Interstate Commission for Supervision of Adult Offenders ("the Commission" or "ICAOS") was established by the Compact and has promulgated rules governing the transfer of supervision from a sending state to a receiving state as well as the return to or retaking  by a sending state.  See 2008 ICAOS Rules.  The ICAOS Rules are binding in the compacting  states and thus have the force and effect of law in Virginia and Georgia. Virginia Code 53.1-176.2, Articles V and VIII; Virginia Code 5149.21, Articles V and VIII.

If an offender is transferred pursuant to the Compact, the receiving state is required to supervise the offender "in a manner determined by the receiving state and consistent with the supervision of other similar offenders sentenced in the receiving state."  ICAOS Rule 4.101.  The duration of supervision is for the length of time determined by the sending state, ICAOS Rule 4.102, and upon request, the offender may return to the sending state in accordance with the  sending state's instructions, ICAOS Rule 4.111.  In the event of a significant violation of the conditions of supervision, the receiving state must notify the sending state of the violation, ICAOS Rule 4.109(a), and the sending state must then respond to the receiving state by informing it of the action the sending state intends to take.  ICAOS Rule 4.109(c)(2).

If the offender is convicted of a new felony offense in the receiving state, the sending state must retake or order the return of the offender upon request by the receiving state and completion of incarceration or placement under supervision for that felony offense. ICAOS Rule 5.102.  The sending state also must retake or order the return of the offender if the offender commits three or more significant violations of supervision arising from separate incidents and establishing a

pattern of non-compliance.   ICAOS Rule 5.103. Although
"[a]n offender subject to retaking for violation of
conditions of supervision that may result in a
revocation shall be afforded the opportunity for a
probable cause hearing" in the receiving state, ICAOS
Rule 5.108(a), if an offender is convicted of a new
felony offense in the receiving state, "an offender may
be retaken by a sending state without the need for
further proceedings," ICAOS Rule 5.108(c); see also
ICAOS Bench Book, 4.4.2.3.

After probable cause is determined, the receiving state
shall hold the offender in custody and the sending state
must "notify the receiving state of the decision to
retake or other action to be taken." ICAOS Rule
5.108(f). The Commission has noted the Compact "does
not impact the judicial sentencing of an offender, only
how the offender is supervised over state lines." ICAOS
Bench Book, 2.12.2. The transfer of an offender's
supervision under the Compact "does not deprive the
sending state ofjurisdiction over the offender, unless
it is clear from the record that the sending state
intended to relinquish jurisdiction." ICAOS Bench Book,
3.3.5.

Although the receiving state must find a probation
violation is likely to result in revocation for purposes
of determining whether the offender is entitled to a
probable cause hearing, "only the state granting
conditional release has jurisdiction to make a final
determination on revocation." ICAOS Bench Book,
4.4.2.3. Thus, while the receiving state may initiate
criminal proceedings against offenders who commit crimes
while in that state, ICAOS Rule 5.101, the Compact "does
not give a receiving state the authority to revoke the
probation or parole imposed by authorities in a sending
state." ICAOS Bench Book, ⬚ 3.3.5; see also Peppers v.
State, 696 So.2d 444 (Fla. Dist. Ct. App. 4th Dist.
1997).

Accordingly, under the Compact, Virginia was required to
supervise The plaintiff and notify Georgia of any
significant violations of the conditions of the
plaintiff's supervision. ICAOS Rules 4.101 and
4.109(a). Because The plaintiff was not convicted of
new felony offenses in Virginia, Virginia was not
required to

retake or order the return of the plaintiff upon request
by Georgia and the parole officer Gilmore should not
have ordered the arrest of the plaintiff. Virginia
felony offenses.   ICAOS Rule 5.102.   Although an
offender subject to retaking for violations of
supervision is generally entitled to a preliminary
hearing to determine whether there is probable cause the
Arlington Office of Parole and Probation violated ICAOS
Rule 5.102, because the plaintiff was entitled to a
probable cause hearing in Virginia.   ICAOS Rule
5.108(c).

And while Virginia is entitled to initiate the criminal
proceedings against The plaintiff for any crimes she may
have committed in that stat, Virginia did not have the
authority under the Compact to revoke the probation
imposed on him by Georgia. ICAOS Bench Book, 3.3.5; see
also Peppers, 696 So.2d 444. C.  Virginia Code.  The
Virginia statutory provisions enacted pursuant to the
Compact also did not grant Virginia authority to revoke
the plaintiff's Virginia probation.  ilar to the ICAOS
Rules, Virginia expressly authorizes a preliminary
hearing to determine probable cause for probation
violations by offenders whose supervision is transferred
under the Compact.  Virginia Code 53.1-168 provides that
when an out-of-state offender is being supervised in
Virginia and is charged with violation of the terms or
conditions of probation, "a preliminary hearing at or
near the site of the alleged violation may be held in
accordance with this article.

The purpose of such hearing shall be to determine
whether there is probable cause to believe that the
parolee or probationer has committed a violation of a
condition of . . . probation."  Likewise, when an
offender being supervised in another state pursuant to
the Compact commits a probation violation, that state
"is authorized to hold a hearing on the alleged
violation, which hearing shall be substantially similar
to the hearing required by this article."  Virginia Code
53.1-172.  Upon receipt of the record of a preliminary
hearing, "such record shall be conclusive and shall not
be reviewable within or by this Commonwealth."  Id.
Although The plaintiff argues the Virginia trial court
had jurisdiction to adjudicate her Virginia probation
violation under

Virginia Code 53.1-172 and its decision was "conclusive,"
as the plaintiff was returned to jail at the Arlington
County Detention Center that section clearly refers to the
probable cause hearing described in Virginia Code ☐ 53.1-
168 and is entirely consistent with the Commission rules
affording offenders a probable cause hearing for probation
violations that may result in revocation, ICAOS Rule
5.108.   But Virginia Code 53.1-172 does not transfer to
another state the jurisdiction to adjudicate the merits of
a Virginia probation violation and revoke the Virginia
probation.

D.  Conclusion

In sum, neither the Compact, Virginia Code ☐ 53.1-172, nor
Virginia Code 2929.141 granted the Virginia trial court
jurisdiction to adjudicate the merits of the plaintiff's
alleged violation as the warrant issued by the state of
Georgia was for parole violation as a result of the
plaintiff refusing to sign papers stating that she was on
parole when she was released on a medical reprieve.   The
plaintiff's alleged violation of her Virginia probation
and revoke her Virginia probation under the procedure
provided for by Commission rules and Virginia Code 53.1-
172, the Virginia court was only authorized to determine
whether probable cause existed to support a violation of
the Virginia probation to allow that The plaintiff to be
retaken by Georgia.

As the Commission has noted, the purpose of the Compact is
to control interstate movement of offenders, without
impacting the judicial sentencing of the offender,
ICAOS Bench Book, 2.12.2.   Because the Virginia trial
court did not have jurisdiction to adjudicate the merits
of the plaintiff's Virginia probation violation and revoke
the plaintiff's Virginia probation, and, in fact, did not
consider the jurisdictional issue, the Virginia trial
court was not required to give full faith and credit to
the Virginia trial court's judgment and was not precluded
from adjudicating the plaintiff's probation violation.

Affirmed.

The Interstate Compact for the Supervision of
Probation/Parolees has been superseded
by the Interstate Compact for the Supervision of Adult
Offenders.   Both Virginia and Georgia are

38

member states.  See Virginia Code 53.1-176.1;
Virginia Code  5149.21. "Sending state" is defined as "a
state requesting the transfer of an offender, or which
transfers supervision of an offender, under the terms of
the Compact and its rules."  "Receiving state" is defined
as "a state to which an offender requests transfer of
supervision or is transferred."  ICAOS Rule 1.101.
"'Retaking' means the act of a sending state in physically
removing an offender, or causing to have an offender
removed, from a resending state."  ICAOS Rule 1.101.
To assist state officials in implementing the Compact and
its rules, the Commission has published ICAOS advisory
opinions and the ICAOS Bench Book for Judges and Court
Personnel.

The sending state may retake or order the return of an
offender, at its sole discretion, unless the offender has
been charged with an offense in the receiving state, in
which case the offender cannot be retaken without the
consent of the receiving state until the charges have been
dismissed, the sentence satisfied, or the offender has
been released to supervision.  ICAOS Rule 5.101.
Virginia Code  53.1-169 through 53.1-171 set forth who may
hold the probable cause hearing, provide for certain
rights of the offender at the hearing, and require a
record of the hearing.  In fact, Virginia Code  53.1-174,
authorizing a "preliminary hearing[] to determine probable
cause" for probation violations for offenders present in
other states not pursuant to the Compact, states that
"[s]uch preliminary hearing shall be substantially similar
to the hearing provided for in 53.1-168 through 53.1-172,"
thus further indicating the hearing referred to in
Virginia Code 53.1-172 is the same hearing described in
Virginia Code 53.1-168.

Since the plaintiff was not convicted of a new felony in
Virginia, a probable cause hearing would have been
required under the Commission rules upon proof of that
conviction.  ICAOS Rule 5.108(c).  The plaintiff was
arrested without a probable cause hearing and solely on
the fact that she refused to sign papers that were in
violations of her fifth amendment rights.  Soon after Joe
Kuebler issued a warrant for the plaintiff's arrest,
citing parole violation knowing the plaintiff was not on
parole however, the Virginia Department of Correction has
enlisted that the plaintiff be on parole under their
condition although the plaintiff is on medical reprieve.

It has been stated by Officer Menton of the Suffolk,
Virginia office of parole that the Commonwealth of
Virginia has no program supervising person(s) released
from prison institutions under medical conditions.

## CONCLUSION

Whereas, these matters are now in the jurisdiction on a
federal level of the United States District Court of the
Eastern-Alexandria. After liability is established for false
arrest, the person who suffered may recover nominal damages as
well as compensation for mental suffering, including fright,
shame, and mortification from the indignity and disgrace,
consequent upon an illegal detention.  The elements to be
considered by the jury in awarding compensatory damages in a
false imprisonment case are physical suffering, mental
suffering and humiliation, loss of time and interruption of
business, reasonable and necessary expenses incurred, and
injury to reputation [xiv].

Substantial rights of the plaintiff have been prejudices
because of the neglect of the above-named defendant(s)
findings, inferences, conclusions and/ or decisions which are
(1) In violation of constitutional or statutory provisions; (2)
in excess of the statutory authority of the agency; (3) made
upon unlawful procedure; (4) affected by other error of law (5)
clearly erroneous in view of the reliable, probative, and
substantial evidence on the whole record; or (6)  arbitrary or

capricious or characterized by abuse of discretion or clearly

unwarranted exercise of discretion.  The plaintiff has suffered

loss of business since being arrested and detained by the

defendant's illegally, as defamation.

The Eighth Amendment guarantees that "cruel and unusual

punishment [not be] inflicted." Estelle v. Gamble, 429 US 97 -

Supreme Court 1976.

The sole issues of the plaintiff's claim is one of Federal

and/or State law or policy 42 C.F.R. 431.230 (1). Gregg v.

Georgia, 428 U. S. 153, 169-173 (1976) (joint opinion of

STEWART, POWELL, and STEVENS, JJ. (Hereinafter joint opinion));

see also Granucci, Nor Cruel and Unusual Punishment Inflicted:

The Original Meaning, 57 Calif. L. Rev. 839 (1969). It suffices

to note that the primary concern of the drafters was to

proscribe "torture[s]" and other "barbar[ous]" methods of

punishment. Id., at 842.

Accordingly, the Court first applied the Eighth Amendment

by comparing challenged methods of execution to concededly

inhuman techniques of punishment. See Wilkerson v. Utah, 99 U.

S. 130, 136 (1879) ("[I]t is safe to affirm that punishments of

torture. . . and all others in the same line of unnecessary

cruelty, are forbidden by that amendment . . ."); In re

Kemmler, 136 U. S. 436, 447 (1890) ("Punishments are cruel when

they involve torture or a lingering death . . ."). Our more

recent cases, however, have held that the Amendment proscribes more than physically barbarous punishments. See, e. g., Gregg v. Georgia, supra, at 171 (joint opinion); Trop v. Dulles, 356 U. S. 86, 100-101 (1958); Weems v. United States, 217 U. S. 349, 373 (1910). The Amendment embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . ," Jackson v. Bishop, 404 F. 2d 571, 579 (CA8 1968), against which we must evaluate penal measures.

Thus, we have held repugnant to the Eighth Amendment punishments which are incompatible with "the evolving standards of decency that mark the progress of a maturing society," Trop v. Dulles, supra, at 101; see also Gregg v. Georgia, supra, at 172-173 (joint opinion); Weems v. United States, supra, at 378, 103*103 or which "involve the unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173 (joint opinion); see also Louisiana ex rel. Francis v. Resweber, 329 U. S. 459, 463 (1947); Wilkerson v. Utah, supra, at 136.[7]

In a suit for false imprisonment, the damages award may include compensation for loss of earnings while imprisoned, for bodily and mental suffering caused by the imprisonment, and for expenses incurred in securing discharge from restraint including a reasonable attorney fee[xvi].The measure of damages for false imprisonment is a sum that will fairly and reasonably compensate the injured person for the injuries caused by the

42

wrongful act including any special pecuniary loss which is a direct result of the false imprisonment[xvii].  A jury can award punitive damages in a false arrest or imprisonment case, if the requisite level of malice or other requisite mental state is established.

All persons who personally participate or cause an unlawful detention are held to be liable.  Similarly, persons other than those who actually cause an imprisonment may be held jointly liable with others, as instigators or participants. However, passive knowledge or consent to the acts of another, or acting on a superior's order, is not sufficient to make a person liable for false imprisonment. It is to be noted that the jail officials are also held liable for false imprisonment for holding a person for an unreasonable time.  A jail official is liable for false imprisonment if s/he knows that an arrest was illegal and that there is no right to imprison the person so arrested. A false imprisonment action cannot be maintained if a person is properly arrested by lawful authority without a warrant.  In order to justify an arrest without a warrant, the arrestor must proceed as soon as may be to make the arrest. Therefore, a private person can arrest another for a public offense committed or attempted in his/her presence [xx].

Wherefore, the plaintiff requests the Court to find the Defendant's actions to be unlawful and injurious to the Plaintiff.  The Plaintiff demands monetary damages in the amount of 20.5 million.  The plaintiff further asks the Court to award such punitive damages as the Court finds necessary to appropriately punish the defendant's and deter similar misconduct in the future. The plaintiff prays the court grant her these proceeding(s) to adjudicate the violations as named in this complaint.  The plaintiff request medical treatment on all medical claims made in this complaint and any cosmetics to restore all damaged bodily functions and parts.   The plaintiff requests the court to find the Defendant's actions to be unlawful and injurious to the plaintiff.  The plaintiff demands monetary damages in the amount of $20.5 million dollars or in the excess to be determined according to proof at trial, plus costs, interest and attorney's fees.  The plaintiff further ask the Court to award such punitive damages as the jury finds necessary to appropriately punish the defendant(s) and deter similar misconduct in the future.  The plaintiff demands a jury trial on all issues so triable. The plaintiff requests that she be allowed to file all papers by electronic means utilizing a laptop in her residence because of her medical condition. And that she is waived of fee(s) for pacer in her informa-pauoeris status.

Respectfully submitted, this __13th__ day of September, 2012

_Tonita Hall_

Tonita Louise Hall
Pro Se
P.O. Box 40123
Arlington, Virginia
703.521.0692